*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L. D. LEASTER, JR., Minor.

UNPUBLISHED
March 02, 2026
2:25 PM

No. 375839
Wayne Circuit Court
Family Division
LC No. 2022-001853-NA

Before: FEENEY, P.J., and GARRETT and BAZZI, JJ.

PER CURIAM.

Respondent-mother appeals as of right a March 31, 2025 order, which terminated her parental rights to her minor child, LL, at the initial disposition. Respondent also challenges the trial court's September 23, 2024 order, which exercised jurisdiction and found statutory grounds to terminate her parental rights under MCL 712A.19b(3) (a)(*ii*) (parent has deserted the child for 91 or more days), [(b)(*ii*) (parent failed to prevent physical injury or abuse),] (b)(*iii*) (abuse by nonparent adult and reasonable likelihood of abuse if child returned to parent), (c)(*i*) (conditions of adjudication continue to exist), (c)(*ii*) (other conditions exist that could have caused the minor child to come within the trial court's jurisdiction), (g) (failure to provide proper care and custody despite financial ability to do so), (j) (reasonable likelihood of harm if child returned to parent), (k)(*i*) (abuse including abandonment), and (k)(*ii*) (abuse including criminal sexual conduct).[1] We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

---

[1] It appears certain statutory grounds cited by the trial court to support termination of respondent's parental rights were erroneously included in the order. But any error was harmless because termination was proper under MCL 712A.19b(3)(j) for the reasons subsequently explained in this opinion. See *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

This matter arose when petitioner, the Department of Health and Human Services (DHHS), filed a petition alleging respondent abused and neglected LL's half-sibling, NO, while she was in respondent's care.[2] NO had scars, "skin injuries," and scurvy from a vitamin C deficiency. LL lived in the home where the abuse and neglect occurred, and it was alleged there was a risk of harm to LL if she remained in respondent's care. It was requested the trial court authorize the petition, place LL in the care of DHHS, exercise jurisdiction, and terminate respondent's parental rights at the initial disposition. After the petition was authorized, LL was placed with relatives, under the supervision of DHHS. Respondent's parenting times with LL were suspended, and DHHS was ordered not to make efforts toward reunification due to aggravated circumstances per MCL 712A.19a(2)(a) and MCL 722.638(2)(c)[3].

The adjudication trial and termination hearing were adjourned multiple times for various reasons. During this time, respondent repeatedly moved for parenting times, but the motions were denied. In May 2024 and September 2024, the trial court held a combined adjudication trial and termination hearing. Testimony was presented concerning the abuse and neglect of NO while in respondent's care. In the September 23, 2024 order, the trial court exercised jurisdiction and found statutory grounds existed to terminate respondent's parental rights to LL as described above. After a best-interest hearing was held on March 7, 2025, the trial court terminated respondent's parental rights to LL in the March 31, 2025 order. This appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews "de novo the interpretation and application of statutes and court rules. De novo review means we do not extend any deference to the trial court." *In re Ott*, 344 Mich App 723, 735; 2 NW3d 120 (2022) (citations omitted). This Court reviews a trial court's decision to suspend, or modify, parenting time for an abuse of discretion. *In re Laster*, 303 Mich App 485; 490-491; 845 NW2d 540 (2013), superseded by statute on other grounds as recognized by *In re Ott*, 344 Mich App at 738-741. "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *In re COH, ERH, JRG, & KBH*, 495 Mich 184, 202; 848 NW2d 107 (2014) (quotation marks and citation omitted).

We review the trial court's "findings of fact underlying the legal issues" for clear error. *In re McCarrick/Lamoreaux (On Remand)*, 307 Mich App 436, 463; 861 NW2d 303 (2014). We also review "for clear error the trial court's finding that there are statutory grounds for termination of a respondent's parental rights." *In re Atchley*, 341 Mich App 332, 343; 990 NW2d 685 (2022). A trial court's best-interest determination is also reviewed for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Miller*, 347 Mich App 420, 425; 15 NW3d 287 (2023) (quotation marks and citation omitted).

---

[2] NO has a different mother, but the same father as LL.

[3] Battering, torture, or other serious physical harm.

## III. SUSPENSION OF PARENTING TIME

Respondent first argues the trial court improperly suspended her parenting time throughout the proceeding, which violated MCL 712A.13a(13). We disagree.

MCL 712A.13a(13) "is tied to custody and placement orders after removal. . . ." *In re Ott*, 344 Mich App at 738. It applies "before and after adjudication." *Id*. at 739. Under MCL 712A.13a(13), "a parent is entitled to parenting time with a removed child unless it 'may be harmful to the juvenile's life, physical health, or mental well-being. . . .' " *In re Ott*, 344 Mich App at 739 (second alteration in original), quoting MCL 712A.13a(13). A finding of harm is required before parenting time can be suspended. See MCL 712A.13a(13).

The trial court did not clearly err when it determined that allowing respondent to have parenting time, even if supervised, may be harmful to LL. Respondent was accused of severe abuse and neglect of NO, who is LL's sibling, in LL's presence. See MCL 712A.13a(1)(*l*). A criminal investigation was ongoing at the time of the preliminary hearing. At that time, the Detroit Police Department did not want one-year-old LL to have contact with respondent. While respondent was not criminally charged and respondent voluntarily participated in parenting classes after the petition was filed, she was still accused of atrocious abuse and neglect and the trial court found that her limited participation was a "small token gesture". The trial court undoubtedly had the authority to suspend respondent's parenting time under MCR 3.977(D) and MCL 712A.19b(4) because respondent was the subject of a permanent custody petition. Additionally, although NO is not respondent's child, and there is no evidence she ever physically harmed LL, respondent abused and neglected NO while LL was also in her care. Living in an environment where this took place would undoubtedly be psychologically harmful to LL. Additionally, for the reasons discussed in detail below, the doctrine of anticipatory neglect applies in this case. The trial court did not abuse its discretion, or violate MCL 712A.13a(13), by suspending respondent's parenting time throughout the proceedings.

## IV. TERMINATION OF PARENTAL RIGHTS

Respondent argues the trial court erred by terminating her parental rights because DHHS failed to make reasonable efforts to reunite her with LL, in violation of MCL 712A.19a(2). Respondent also challenges the trial court's application of the doctrine of anticipatory neglect, and argues a statutory ground did not exist to terminate her parental rights. We disagree.

### A. REASONABLE REUNIFICATION EFFORTS

Child protective proceedings are generally divided into two phases: the adjudicative phase, which determines whether the court can take jurisdiction over a juvenile, and the dispositional phase, which determines what action will be taken on behalf of the juvenile. *In re Pederson*, 331 Mich App 445, 463-464; 951 NW2d 704 (2020). "One of the actions that the trial court may take is to terminate parental rights." *In re Barber/Espinoza*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 167745); slip op at 3, citing MCL 712A.19b. "In most circumstances, however, DHHS has an affirmative duty to make reasonable efforts to achieve reunification before a court may terminate parental rights." *In re Barber/Espinoza*, ___ Mich at ___; slip op at 3. "[O]nly in rare circumstances provided by statute may the trial court hold a combined adjudicative and

-3-

dispositional hearing in which parental rights may be terminated at the initial dispositional hearing." *Id*. at ___; slip op at 3, citing MCL 712A.19b(4) and MCR 3.977(E).

"MCL 712A.19a(2) provides a narrow exception for when DHHS may forgo reasonable reunification efforts." *In re Barber/Espinoza*, ___ Mich at ___; slip op at 3. Relevant in this case is MCL 712A.19a(2)(a), which permits termination of parental rights without DHHS being required to make reasonable reunification efforts where "[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in . . . MCL 722.638." See MCL 712A.19a(2)(a). MCL 722.638 states, in relevant part:

> (1) The department shall submit a petition for authorization by the court. . . if 1 or more of the following apply:
>
> (a) The department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child and the abuse included 1 or more of the following:
>
> * * *
>
> (*iii*) Battering, torture, or other serious physical harm.
>
> * * *
>
> (2) In a petition submitted as required by subsection (1), if a parent is a suspected perpetrator . . . the department shall include a request for termination of parental rights at the initial dispositional hearing. . . .

"Under MCL 712A.19a(2)(a), in order to conclude that aggravated circumstances exist that excuse the requirement of reasonable efforts toward reunification, a trial court must make findings consistent with both MCL 722.638(1) and MCL 722.638(2)." *In re Barber/Espinoza*, ___ Mich at ___; slip op at 9. In this case, DHHS was ordered not to make efforts toward reunification because the trial court found respondent "[t]orture[d]" NO, who was beaten, locked in a room, and found covered in her own feces. This was not clear error.

"The first relevant finding required by MCL 722.638(1)(a) is whether 'a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child . . ..' " See *In re Barber/Espinoza*, ___ Mich at ___; slip op at 9 (alteration in original), quoting MCL 722.638(1)(a). NO was placed in respondent's care beginning in either June 2022 or July 2022. NO remained there until she was taken to the hospital on October 18, 2022. During the time NO lived in respondent's home, respondent was more than 18 years of age, and NO was less than 18 years of age. Also, contrary to respondent's arguments on appeal, NO and LL are siblings because they are related by birth through one common parent. See MCL 712A.13a(1)(*l*).

With respect to whether respondent abused NO, MCL 722.622(g) defines "child abuse" as: "[H]arm or threatened harm to a child's health or welfare that occurs through nonaccidental physical or mental injury, sexual abuse, sexual exploitation, or maltreatment, by a parent, a legal

-4-

guardian, [or] any other person responsible for the child's health or welfare. . . ." See also *In re Barber/Espinoza*, ___ Mich at ___; slip op at 10 (relying on MCL 722.622(g) to define "abuse"). Respondent admitted she hit NO with her hands. The legal father of NO and LL reported he knew respondent physically abused NO while she was in her care, and he did not intervene.

Dr. Bradley Norat, who examined NO in October 2022, testified NO had "a scar to the right side of her jawline" and "areas of scarring around her eyes, by her eyebrows." There were also "skin injuries," "multiple scars covering [NO's] back," "scarring on the backside of her hips," an "injury to her left lateral thigh," and "a healed loop mark on her right lower leg." These issues "drove the concern for child physical abuse." NO reported she "fell from a bike which resulted in an injury to her [left] leg the week prior." However, Dr. Norat did not believe the scarring on NO's back was caused from falling off a bicycle because children tend to fall forward, "and they protect themselves with their hands" or arms. Even if a child fell backward, it would be unusual to "have this quantity of injury," or skin lesions. Dr. Norat did not count the number of scars on NO's body because "[t]here was such a quantity that [he] did not feel that that would be appropriate." Dr. Norat's medical opinion would not have changed if he knew the exact number of scars. He testified NO's injuries were "highly concerning for non-accidental trauma," and he agreed the injuries were consistent with "a series of assaultive events." Based on this evidence, the court properly concluded that respondent abused NO. See MCL 722.622(g).

"But child abuse perpetrated by a listed individual is not independently sufficient to satisfy the requirements of MCL 722.638(1)." *In re Barber/Espinoza*, ___ Mich at ___; slip op at 11. "Such abuse committed by a listed offender must also have included certain circumstances listed under MCL 722.638(1)(a)(*i*) through (*vi*)." *In re Barber/Espinoza*, ___ Mich at ___; slip op at 11 (quotation marks omitted). The relevant additional circumstance relied upon DHHS and the trial court in this case is "[b]attering, torture, or other serious physical harm." See MCL 722.638(1)(a)(*iii*).

The evidence presented permitted an inference that respondent had repeatedly physically abused NO in the months she was placed in respondent's care. Respondent admitted to using corporeal punishment and hitting NO. Respondent-father Leaster admitted to witnessing physical abuse and that he did not intervene. The medical testimony of Dr. Norat established NO was subjected to a series of assaultive events, as opposed to accidental events that often occur in childhood. Dr. Norat did not count the number of scars on NO's body, which were copious and found on her back, legs, and face. Because NO had scarring, it is clear the wounds caused by the abuse created permanent physical changes. As a result, there was sufficient evidence to support the trial court's finding respondent abused NO; and the abuse amounted to battering, torture, or other severe physical abuse. See MCL 722.638(1)(a)(*iii*). We are not left with the definite and firm conviction a mistake was made. Because "the circumstances in *both* MCL 722.638(1)[(a)(*iii*)] and MCL 722.638(2) [were] demonstrated," aggravated circumstances existed. See *In re Barber/Espinoza*, ___ Mich at ___; slip op at 12. DHHS was not obligated to make reasonable efforts to reunify LL and respondent. See *id*. at ___; slip op at 12.

## B. STATUTORY GROUNDS

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted). We conclude termination was proper under MCL 712A.19b(3)(j), which permits termination when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent." Exhibiting behavior that would put a child at a risk of harm is sufficient to justify terminating parental rights under MCL 712A.19b(3)(j). *In re White*, 303 Mich App at 712-713. The harm contemplated under (j) includes emotional harm, as well as physical harm. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011).

LL was removed from respondent's care because respondent physically abused and neglected NO. LL was in the same home as NO when this occurred, which demonstrates respondent's disregard for LL's psychological well-being. Although respondent was not given a case-service plan because DHHS sought termination at the initial disposition, she was referred for a psychological evaluation and mental health counseling. Respondent did not submit to the psychological evaluation, and she was terminated from counseling because of her inconsistent participation. Respondent voluntarily completed a parenting class in 2023 and attended court hearings. However, she failed to stay in contact with the caseworker in the months leading up to termination despite the caseworker's efforts to engage respondent.

Respondent is correct that the evidence did not indicate she physically abused, or neglected, LL. However, "the doctrine of anticipatory neglect allows an inference that a parent's treatment of one child is probative of how that parent will treat other children." *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020). The doctrine "permits a forward-looking assessment of risk." *In re KV*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 374236); slip op at 7. If applicable, "it permits an inference that a parent who abuses a child's sibling may also abuse that child." *Id*. at ___; slip op at 8. However, this Court has cautioned against relying on the doctrine of anticipatory neglect when the child at issue has not been abused and is not similarly situated to a sibling who was abused. See e.g., *In re LaFrance*, 306 Mich App 713, 730-732; 858 NW2d 143 (2014). The probative value of the evidence must be considered before the doctrine can be applied. See *In re Kellogg*, 331 Mich App at 260. "[T]he probative value . . . is decreased by differences between the children, such as age and medical conditions." *In re Boshell/Shelton*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371973); slip op at 6 (quotation marks and citations omitted).

In this case, there are ostensible differences between LL and NO. NO is not respondent's biological child. NO is also older and of a different gender than LL. However, these differences alone do not demonstrate that LL would be safe from physical abuse and neglect while in respondent's care. Respondent's abuse and neglect of NO was significant. NO was discovered locked in a room in respondent's home for 12 hours a day after NO called 911. NO was covered in feces and displayed signs of severe physical abuse, including scarring on her face and back. NO

had a significant vitamin C deficiency, which resulted in NO developing scurvy and being hospitalized. It was noted NO was unable to "bear weight on her left leg." CAT scans revealed subperiosteal hematomas on both thighs, which are caused by "bleeding underneath" the protein-rich layer "on the outside of the bones." Subperiosteal hematomas are associated with "scurvy or a vitamin C deficiency." According to Dr. Norat, scurvy is highly preventable. NO's vitamin C levels registered at a level five, which was the lowest level. NO was also not enrolled in school while in respondent's care.

Importantly, caselaw suggests the doctrine of anticipatory neglect can be applicable despite differences in age, gender, and biological relationship because "abuse is abuse." See *In re Mota*, 334 Mich App 300, 320, 322-323; 964 NW2d 881 (2020). There is no indication respondent would not physically abuse or neglect LL simply because he is her male biological child, who is younger in years than NO. Arguably, LL's young age would make him more vulnerable to abuse, and there is no indication LL and NO had different developmental needs. Cf. *In re LaFrance*, 306 Mich App at 730-732; *Kellogg*, 331 Mich App at 260. Importantly, respondent disregarded LL's well-being by abusing and neglecting NO over a period of months, while LL lived in the same home. This disregard for LL's psychological well-being, combined with the significant abuse and neglect experienced by NO, supports application of the doctrine of anticipatory neglect. See *In re Hudson*, 294 Mich App at 267-268. Evidence of respondent's treatment of NO is highly probative of how respondent would treat LL, and the trial court did not improperly rely on the doctrine of anticipatory neglect. The trial court's finding that termination of respondent's parental rights was proper under MCL 712A.19b(3)(j) was not clearly erroneous.[4]

## C. BEST INTERESTS

Respondent argues the trial court clearly erred by finding termination of her parental rights was in LL's best interests, and sufficient findings of fact were not made to support this decision. We disagree.

"The trial court must order the parent's rights terminated if [DHHS] has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App at 713. See also MCR 3.977(E)(4). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. This Court focuses on the child—not the parent—when reviewing best interests. *In re Atchley*, 341 Mich App at 346. When determining best interests,

> the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home.

---

[4] Because only one statutory ground for termination must be established by clear and convincing evidence, we need not consider whether termination was proper on the remaining grounds relied upon by the trial court. See *In re Ellis*, 294 Mich App at 32 ("[o]nly one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights").

The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

When a minor child is placed with a relative, that placement "is an explicit factor to consider" in the best-interest analysis. *In re Olive/Metts*, 297 Mich App 35, 43; 823 NW2d 144 (2012) (quotation marks and citation omitted). "The court shall state on the record or in writing its findings of fact and conclusions of law." MCR 3.977(I)(1). "The trial court's findings need not be extensive; 'brief, definite, and pertinent findings and conclusions on contested matters are sufficient.' " *In re MJC*, 349 Mich App 42, 62; 27 NW3d 122 (2023), quoting MCR 3.977(I)(1).

In this case, respondent argues the trial court failed to make sufficient findings to support termination was in LL's best interests. We disagree because detailed findings of fact were made by the referee who presided over the best-interest hearing. The findings, set forth below, were oral and in writing, and the trial court adopted them. The findings as to LL's best interests more than satisfied MCR 3.977(I)(2)'s requirements.

Respondent next argues the evidence did not establish that it was in LL's best interests for her parental rights to be terminated. We again disagree because the record establishes LL and respondent were not bonded. LL was removed from respondent's care when he was 18 months old. At the time of termination, LL had not seen respondent in more than two years. Respondent's parenting time was suspended throughout the proceedings, which was necessary to protect LL.

While the parent-child bond is only one factor to consider, *In re Olive/Metts*, 297 Mich App at 41-42, the record also supports respondent was unable to safely parent LL. Respondent physically abused and neglected NO while NO was in her care for several months. Although respondent is correct there was no evidence to support LL was physically abused or neglected, the doctrine of anticipatory neglect applied. Additionally, the record supports LL was exposed to NO's abuse and neglect, which was significant. This undoubtedly demonstrated respondent's lack of concern for LL's mental well-being. Respondent's abuse and neglect of NO also occurred while NO was under the supervision of DHHS. While DHHS was not obligated to provide respondent with a case-service plan, she was referred to mental health counseling and a psychological evaluation. Respondent failed to submit to the evaluation and was terminated from counseling because of her failure to comply. Respondent voluntarily completed a parenting class in 2023 and attended all court hearings, but she failed to maintain communication with the caseworker in the months leading up to termination.

LL, who had been in foster care for most of his young life, required permanency and stability. LL was doing well in the care of his maternal grandparents, with whom he had been placed for the duration of the proceedings. LL had a healthy bond with his grandparents, who were devoted to LL's well-being and wanted to adopt him. Notably, the grandparents preferred adoption over a guardianship. While it is true that relative placement weighs against termination, termination is not prohibited merely because the child is placed with a relative. See *In re Olive/Metts*, 297 Mich App at 43. Rather, the child's best interests control. See *In re Atchley*, 341 Mich App at 346. LL's placement with relatives was considered, and it was nonetheless found

-8-

termination was in his best interests. A preponderance of the evidence establishes termination of respondent's parental rights was in LL's best interests. The trial court did not clearly err by terminating respondent's parental rights.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Kristina Robinson Garrett
/s/ Mariam S. Bazzi